UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARLA B.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK J. BISIGNANO, Commissioner of Social Security Administration,[2]<br><br>Defendant. | ) | Case No. 3:23-cv-30116-CLM |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION
(Docket No. 24)

MORGAN, U.S.M.J.

Carla B. ("Plaintiff"), proceeding pro se, brings an amended complaint against the U.S. Social Security Administration ("the Administration") seeking "backpay of $60,300.00 [in disability insurance benefits] and $1.5 million in punitive, compensatory and emotional damages" (Dkt. No. 10, at 3). This court is empowered pursuant to 42 U.S.C. § 405(g) to review final decisions of the

---

[1] In the interest of privacy, this Memorandum and Order uses only the first name and first initial of the last name of the non-governmental party in this case. *See S.R. v. Soc. Sec. Admin.*, Civil No. 24-12335-LTS, 2025 WL 815122, at *2 (D. Mass. Mar. 6, 2025) ("Use of [the] initial[ ] protects the claimant's privacy while still ensuring public access to the [c]ourt's reasoning and decision.").

[2] Pursuant to Fed. R. Civ. P. 25(d), Frank J. Bisignano, Commissioner of the Social Security Administration, is automatically substituted for former Commissioner Martin O'Malley, who was substituted for former Acting Commissioner Kilolo Kijakazi.

Commissioner if timely appealed and may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Before the court is the Commissioner's motion to affirm his final December 21, 2022, partially favorable decision (Dkt. No. 24). While Plaintiff did not file a motion for judgment on the pleadings, she filed a document captioned "Opening Brief" that the court treats as such (Dkt. No. 14). The parties have consented to this court's jurisdiction (Dkt. No. 49). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, the court GRANTS the Commissioner's motion.

## I. RELEVANT FACTUAL BACKGROUND

The case has a tangled administrative history dating back over two decades. On October 24, 2002, Plaintiff applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") alleging disability since June 30, 1999;[3] her application was given a protective filing date of October 15, 2002 (A.R. 13, 39).[4] On December 19, 2002, the Administration denied Plaintiff's DIB application based on insufficient evidence of disability on or before the date last insured (A.R. 13, 39). Plaintiff did not request Appeals Council review of that determination, and it became administratively final (A.R. 39). *See* 20 C.F.R. §

---

[3] A person may apply at the same time for DIB and SSI under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 423(a)(1) & (c)(1), 1382(a)(1) & (c)(1).

[4] All citations to "A.R." refer to the administrative record, which appears at docket number 13-1 of this case. The page numbers were assigned by the Social Security Administration and appear in the upper righthand corner of each page.

404.968 (allowing 60 days following notice of a hearing decision to request Appeals Council review). On December 30, 2002, the Administration found Plaintiff disabled under Title XVI with an onset date of October 1, 2002 (A.R. 13, 39).

Approximately ten years later, on October 22, 2012, Plaintiff filed a second application for DIB alleging disability since July 1, 2000 (A.R. 13, 40). The Administration denied the application initially and on reconsideration (A.R. 13, 40). Plaintiff requested a hearing before an ALJ, but the request was dismissed based on her failure to appear and the Appeals Council declined to alter or remand the dismissal (A.R. 40). Another session of this court dismissed Plaintiff's request for judicial review based on her failure to exhaust administrative remedies (A.R. 40). *See Bouvier v. Colvin*, No. 1:14-cv-13817-JCB, Dkt. No. 30, at 4 ("Because no hearing was conducted, no 'final decision' has been rendered and this Court therefore lacks jurisdiction.") (internal citations omitted). The First Circuit summarily affirmed the dismissal, and the Supreme Court denied certiorari. *See id.*, Dkt. Nos. 36, 41.

Plaintiff filed a third application for DIB on June 7, 2016, with a protective filing date of May 26, 2016 (A.R. 13, 40). The application was denied initially, but on reconsideration the Administration found Plaintiff disabled under Title II with a disability onset date of August 15, 1999 (A.R. 40-41). In a September 22, 2016, Notice of Award, the Administration advised Plaintiff that she was entitled to DIB beginning in May 2015, 12 months before her protective filing date (A.R. 41 & n.9). Plaintiff notified the Administration of her disagreement with the "retroactive

payment amount" and the "monthly payment amount," and indicated her belief that she was entitled to benefits beginning in 1984 (A.R. 41). Thereafter, the Administration conducted a "special determination" to "reopen" the September 22, 2016, determination based on "good cause" established by the Administration's receipt of medical evidence that it did not receive in connection with her 2002 application (A.R. 41-42; 120-121). As a result of the "special determination," the Administration revised the September 22, 2016, determination to change the benefit entitlement from May 2015 to October 2001, twelve months before Plaintiff's October 2002 application (A.R. 42, 120). However, in a May 10, 2017, Notice of Award, the Administration advised Plaintiff that it was withholding her DIB benefits for the period between October 2002 and April 2015 to determine whether it should be offset based on her receipt of SSI during the same period (A.R. 13, 42).[5]

On June 27, 2017, Plaintiff requested a hearing before an ALJ regarding the May 10, 2017, determination (A.R. 42). Before the hearing took place, the Administration sent Plaintiff a Notice of Change in Benefits, dated August 7, 2017, advising her that the back-due amount owed to her was $6,300 (A.R. 42, 71-73). This figure represented $66,649 in DIB for the period October 2002 to July 2015, less the $60,349 in SSI that she received during that time (which she would not have been entitled to had she been receiving DIB) (A.R. 13, 42, 71).

[5] Retroactive DIB payments are reduced by the amount of SSI an individual received for the same period. 42 U.S.C. § 1320a-6(a).

Following a hearing on December 12, 2017, the ALJ issued a decision on December 27, 2017 (A.R. 36-48). The ALJ determined that (1) the Administration erred in "reopening" the September 22, 2016, reconsideration determination; (2) the December 19, 2002, unfavorable determination was administratively final and could not be reopened, meaning that the October 2002 filing date could not be used for benefit computation; (3) the earliest allowable month of entitlement for DIB on Plaintiff's May 26, 2016, application was May 2015; and (4) Plaintiff's monthly benefit amount was correct (A.R. 44-48).

Following this decision, on February 5, 2018, the Administration sent Plaintiff a Notice that she had been overpaid $6,300, for which Plaintiff requested a waiver of overpayment (A.R. 14, 79-82, 122-134). The Administration notified Plaintiff on June 10, 2021, that it had already recovered $1,683.50 of the overpayment by withholding a portion of her monthly benefits, but that the remaining $4,616.50 was waived (A.R. 14, 136-137). Plaintiff requested another hearing before an ALJ, and one was held on October 3, 2022 (A.R. 14, 96, 99-103). Following the hearing, the ALJ determined in a December 21, 2022, partially favorable decision that Plaintiff was not at fault for causing the overpayment and that recovery thereof would be against equity and good conscience (A.R. 15-16). Accordingly, recovery of the overpayment was waived, and the Administration was required to refund to Plaintiff the $1,683.50 already recovered (A.R. 16). Lastly, the ALJ determined that the December 27, 2017, ALJ decision was final and with no grounds existing to reopen it, foreclosing any basis for paying Plaintiff DIB before

May 2015 (A.R. 16). The Appeals Council denied Plaintiff's request for review, finding no reason under the rules to review the decision (A.R. 1-9).

## II. ANALYSIS

### A. Standard of Review

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. § 405(g). Judicial review is limited to determining "'whether the [ALJ's] final decision is supported by substantial evidence and whether the correct legal standard was used.'" *Coskery v. Berryhill,* 892 F.3d 1, 3 (1st Cir. 2018) (quoting *Seavey v. Barnhart,* 276 F.3d 1, 9 (1st Cir. 2001)). The court reviews questions of law *de novo*, *id.*, but "the ALJ's findings [of fact] shall be conclusive if they are supported by substantial evidence, and must be upheld 'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion,' even if the record could also justify a different conclusion." *Applebee v. Berryhill*, 744 F. App'x 6, 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir. 2003) (internal quotation marks omitted)). In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and

not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence. *See Applebee*, 744 F. App'x at 6. That said, the ALJ may not ignore evidence, misapply the law, or judge matters entrusted to experts. *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

B. Discussion

By her amended complaint, Plaintiff seeks "her backpay of $60,300 and $1.5 million in punitive, compensatory and emotional damages" (Dkt. No. 10, at 3). Plaintiff asserts two bases for her requested relief. First, she cites Sections 202(j) and 1631(e) of the Social Security Act (42 U.S.C. § 402 and § 1383) which provide with respect to Old-Age, Survivors, and Disability Insurance benefits and Supplemental Security Income benefits, respectively, that:

> In any case in which it is determined to the satisfaction of the Commissioner of Social Security that an individual failed as of any date to apply for . . . benefits under this subchapter by reason of misinformation provided to such individual by any officer or employee of the Social Security Administration relating to such individual's eligibility for benefits under this subchapter, such individual shall be deemed to have applied for such benefits on the later of—
>
> (A) the date on which such misinformation was provided to such individual, or
>
> (B) the date on which such individual met all requirements for entitlement to such benefits (other than application therefor).

42 U.S.C.A. §§ 402, 1383.[6] Pursuant to regulation, "misinformation" in this context is "information which [the Administration] consider[s] to be incorrect, misleading, or incomplete in view of the facts which [the claimant] gave to the employee, or of which the employee was aware or should have been aware, regarding [the claimant's] particular circumstances," and "[t]he misinformation must have been provided to [the claimant] in response to a specific request by [the claimant] to [the Administration] for information about [the claimant's] eligibility for benefits . . . ." 20 C.F.R. § 404.633(c)(2) & (4). Secondly, Plaintiff "seek[s] damages due to the erroneous mishandling of her claim that was filed in 1999-2000" (Dkt. No. 10, at 1). Plaintiff, who identifies as "of mixed ethnicity," references an alleged "intentional[ ] violat[ion of her] civil rights" by the Administration by "intentionally mishandl[ing her] claim," and "continuously g[iving] her misleading information pertaining to the case and her appeals for the duration of nearly 20 years or more" (*id.*, at 1-2). Plaintiff cannot succeed on either basis.

Turning first to the request for backpay, Plaintiff's justification for asserting an entitlement to backpay in the amount of $60,300 is unclear.[7] The Administration attributes it to a misreading of the August 7, 2017 Notice advising Plaintiff of the Administration's calculation at that time that Plaintiff was owed $6,300 in

---

[6] The only difference between the two sections is that the words "monthly insurance" appear in § 402 where the ellipses are indicated, while those words do not appear in § 1383.

[7] In her "Opening Brief," Plaintiff also mentions the sum of $63,300, but later switches back to $60,300 (Dkt. No. 14, at 4).

retroactive DIB, representing the DIB backpay to which she was entitled ($66,649) less the amount of SSI she had received during the relevant period ($60,349) (A.R. 13, 42). Regardless of the rationale for Plaintiff's claim, there is no justification in the record for awarding Plaintiff any amount of backpay.

In the December 21, 2022, decision under review, the ALJ determined that the earlier December 27, 2017, decision—in which the ALJ had determined that the earliest allowable month of entitlement for DIB on Plaintiff's May 26, 2016, application was May 2015—was final with no grounds for reopening it, thereby foreclosing any basis for paying Plaintiff DIB before May 2015 (A.R. 16, 47-48). In reaching his finality finding with respect to the December 27, 2017, decision, the ALJ explained that to reopen a prior un-appealed determination or decision after the passage of twelve months but within four years, as Plaintiff's was, a claimant must establish good cause, and he found a lack of good cause in the record (A.R. 16).

As discussed above, this court's review of the decision is limited to determining whether the ALJ used the correct legal standard and whether his factual findings are supported by substantial evidence. *Coskery,* 892 F.3d at 3. Here, the ALJ correctly applied the good cause standard to reopen Plaintiff's un-appealed December 27, 2017, decision, as mandated by the governing regulations. *See* 20 C.F.R. § 404.988 ("A determination, revised determination, decision, or revised decision may be reopened . . . [w]ithin four years of the date of the notice of the initial determination if we find good cause . . . to reopen the case . . . ."). Moreover, the ALJ's finding of a lack of good cause is grounded in substantial evidence where

the record is devoid of new and material evidence, evidence of a clerical error in the computation of benefits, and evidence that "clearly shows on its face that an error was made." 20 C.F.R. § 404.989 (defining "good cause" for purposes of § 404.988). Accordingly, there is no basis for disturbing the ALJ's determination of administrative finality as to the December 27, 2017, decision, with no grounds for reopening.

Plaintiff's invocation of 42 U.S.C. §§ 402 & 1383 do not change this result. As set forth above, these statutory provisions provide relief in the form of an earlier deemed filing date where the claimant satisfactorily shows that she failed to file for benefits sooner because an employee of the Administration provided her with misinformation relating to her eligibility. *See Costello v. Astrue*, 499 F.3d 648, 650 (7th Cir. 2007) ("In short, if [the plaintiff] failed to apply for Social Security benefits because she received misinformation, then the agency must backdate any subsequent applications to the time when it would have been made, had the information been correct."). Plaintiff failed to flesh out a misinformation claim before the ALJ or in her "Opening Brief" before this court. In a letter Plaintiff submitted to the ALJ the same day as her hearing, she accused "social security representative Greg Cronin [of] deliberately sabotag[ing] [her] claim by associating [her] disability claim with SSI benefits for which [she] never applied . . . " (A.R. 149). In her "Opening Brief," she complains of alleged "intentional[ ] mishandl[ing] [of her] claim in 1999-2000" by Cronin, documentation of "additional false information stating the reason for not receiving her back pay," and "continuous[ ]

[provision by the Administration of] misleading information pertaining to her case and her appeals for . . . 20 years or more" (Dkt. No. 14, at 2). As to each of these claims, even if there was substantial evidence in the record to back them up—which there is not—none would constitute the provision of misinformation about eligibility in response to a specific request that could justify an earlier deemed filing date and somehow entitle Plaintiff to backpay. Plaintiff did not and does not identify any allegedly incorrect eligibility information Cronin or any other Administration employee provided to her before October 24, 2002, the date of her first application, that resulted in her delaying until that date to apply for benefits.

Plaintiff's invocation of alleged racial discrimination underlying the Administration's alleged mishandling of her claim and provision to her of erroneous information to justify the imposition of $1.5 million in damages fares no better. This court's jurisdiction to review the Commissioner's final decision in this matter is founded on 42 U.S.C. § 405(g), which limits the court's authority to "enter[ing], upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . ." 42 U.S.C. § 405(g). Moreover, pursuant to Section § 405(h), "[n]o . . . decision of the Commissioner . . . shall be reviewed by any person, tribunal, or governmental agency except as provided herein," and "[n]o action against . . . the Commissioner . . . shall be brought under section 1331 [granting district courts original federal question jurisdiction] or 1346 [granting district courts original jurisdiction over certain claims against the United States] of title 28 to recover on any claim arising

under this subchapter." 42 U.S.C. § 405(h). Thus, Section § 405(g) represents "a very narrow waiver of sovereign immunity of the [Administration]." *Garrett v. Soc. Sec. Admin.*, Civil Action No. 25-13833-MJJ, 2025 WL 3770852, at *1 (D. Mass. Dec. 31, 2025). "Section § 405(g) does not contain a damages remedy, and it is the exclusive method 'to recover on any claim arising under' the Social Security Act." *Id.* at *2 (citing 42 U.S.C. § 405(h)). As a result, "[w]here a plaintiff challenges any misconduct related to the denial of Social Security benefits [as Plaintiff does here], [her] remedy is limited to the benefits (if any) that were wrongly denied." *Id.* (internal citations omitted). Because § 405(g) precludes federal question jurisdiction over Plaintiff's Title VII claim for damages allegedly resulting from the Administration's racially discriminatory treatment of her claim for benefits, it is subject to dismissal.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to affirm the Commissioner's decision (Dkt. No. 24) is GRANTED. The clerk is directed to close the case.

It is so ordered.

Date: August 26, 2026

/s/ Christopher L. Morgan
CHRISTOPER L. MORGAN
U.S. MAGISTRATE JUDGE